# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. NESMITH, | ) | |
| | ) | Civil Action No. 11 - 388 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BEAVER COUNTY JAIL and BETH, L.N.U., | ) | |
| | ) | ECF Nos. 18, 27 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

This case is before the Court on the Motions to Dismiss filed by Defendants Beaver County Jail (ECF No. 27) and Beth Harris (ECF No. 18). For the following reasons, the Motions will be granted and this case will be dismissed with prejudice as granting Plaintiff leave to amend would be futile.

### I.  Background and Procedural History

Plaintiff, Richard A. Nesmith ("Nesmith"), filed a Complaint on March 25, 2011 against Defendants Beaver County Jail ("BCJ") and Beth Harris ("Beth"), a Registered Nurse employed at BCJ, to enforce his rights under the Fourth, Sixth, Eighth, and Thirteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983. (ECF No. 3 at 1.) Nesmith filed additional Exhibits on May 12, 2011, part of which was labeled "Amendment to the Above Civil Action." (ECF No. 9 at 1.)

Beth filed a Motion to Dismiss and supporting Brief on March 7, 2012. (ECF No. 18, 19.) Nesmith filed a Response to Beth's Motion on March 15, 2012. (ECF No. 25.) BCJ filed a

Motion to Dismiss and supporting Brief on April 23, 2012. (ECF No. 27, 28.) On May 25, 2012, Chief Magistrate Judge Lisa Pupo Lenihan ordered Nesmith to respond to or amend his Complaint in accordance with BCJ's Motion no later than June 15, 2012, however Nesmith did not comply with this Order and has not filed a response or amendment to this date.

Further, Nesmith's Response at ECF No. 25 includes additional claims not found in his original Complaint. Because Nesmith did not raise these claims in his Complaint or Amendment, but rather raised them in his Response, they will not be addressed. *See*, Hang On, Inc. v. City of Arlington, 65 F.3d 1248 (5th Cir. 1995); Gueson v. Feldman, No. 00-cv-1117, 2002 WL 32308678, at *4 (E.D. Pa. Aug. 22, 2002) ("A plaintiff may not raise new claims in response to a motion to dismiss.").

According to the Complaint, Nesmith was incarcerated at BCJ on January 26, 2011 when he was approached by Jennifer Monza ("Monza") to recover a DNA sample in order to pursue a furlough to attend his brother's funeral. (ECF No. 3 at 2.) After Nesmith refused the initial test, Carol Steele ("Steele") and a "white shirt officer" sought him out and explained that he had to give a DNA sample in order to go to his brother's service. (ECF No. 3 at 4.) Nesmith alleges that he voluntarily gave a DNA sample but was not granted furlough and thus did not attend the funeral service. (ECF No. 3 at 4.) Nesmith filed a grievance in response to being denied furlough and ultimately exhausted his administrative remedies. (ECF No. 3 at 3-4.)

Nesmith also alleges that Monza and Beth "had [him] moved to medical ISO" because he suffers from sleep apnea and uses a Bi-Pap Sleep Machine ("machine") for treatment. (ECF No. 3 at 5.) Nesmith further alleges that it was his understanding that he could have his personal machine after inspection by "RBC." (ECF No. 3 at 5.) Nesmith's machine was brought to BCJ and "held in medical from [December] 2010 to March 2011" for inspection. (ECF No. 3 at 5.)

Nesmith alleges that Beth stopped answering his medical requests, however Nesmith also alleges that Beth responded to his medical communications in a manner unsatisfactory to Nesmith. (ECF No. 3 at 5.) Specifically, Nesmith claims that Beth's responses "would come back with things like [the] Dr. will see [you] soon, or your (sic) on the…Dr. list." (ECF No. 3 at 5.) Nesmith further alleges that he suffers from three chronic medical conditions including sleep apnea, chronic pain, and a heart condition. (ECF No. 3 at 5.) Nesmith alleges that "medical staff…refuse[d] to address" these medical conditions and that a failure to treat his sleep apnea has resulted in pain "on [the] area of the stent that was put in." (ECF No. 3 at 5.) Nesmith includes medical request forms as Exhibits, which indicate that Nesmith acknowledged receipt of medication, doctor's evaluations, and an extra mattress as part of a treatment plan for his back pain and heart condition. (ECF No. 3-1 at 4, 5, and 13.)

In addition, Nesmith alleges that the food portions at BCJ are "so small that it's funny," and that other inmates have found maggots in their food. (ECF No. 3 at 6.) However, Nesmith does not allege that any grievances were filed or any personal knowledge of unsanitary food. (ECF No. 3 at 6.) Finally, Nesmith alleges that prices in the commissary are "crazy high" and that the "wardon's (sic) wife owns or runs the food store." (ECF No. 3 at 6.) Nesmith suggests that there is a conspiracy within BCJ to provide inadequate food to inmates so that they will spend money on overpriced commissary food that profits the warden's family. (ECF No. 3 at 6.)

In addition, Nesmith filed a separate Complaint against Beth and Southern Health Partners on March 31, 2011, for violations of his Fourth, Sixth, Eighth, and Thirteenth Amendment rights at civil action number 11-425. Nesmith's Complaint alleged that Beth and the medical staff were "just not responding to [his] medical needs," specifically his back pain, sleep apnea, and heart condition. (C.A. No. 11-425, ECF No. 3.) Judge Terrence McVerry

issued an Order on February 9, 2012 granting Defendants' Motions to Dismiss in regard to this Complaint. (C.A. No. 11-425, ECF No. 23.) Nesmith filed a Motion for Reconsideration on February 27, 2012 that was denied on February 29, 2012. (C.A. No. 11-425, ECF Nos. 24 and 25.)

## II.     Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or

identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III. Discussion of Applicable Legal Authority and Analysis

**A. Claims Against Beth**

**1. Claim Preclusion**

Beth contends that Nesmith's Complaint contains "the same allegations as [Nesmith's] Complaint filed to Docket Number 2:11-cv-425, which have been dismissed." (ECF No. 19 at

1.) Nesmith's Complaint filed to C.A. No. 11-425 includes claims relating to treatment of chronic back pain, heart and chest pain, and sleep apnea. (Case No. 11-425, ECF No. 3 at 4.) As noted in Beth's Brief, "[t]here are no medical issues raised in Plaintiff's Complaint which were not also brought in the case at 2:11-cv-425." (ECF No. 19 at 2.) Because Nesmith's claims at 11-425 are identical to those in the current Complaint, Nesmith's Complaint should be barred on the ground of *res judicata*. *See*, Brown v. Felsen, 442 U.S. 127, 131 (1979) (holding that "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties…[and] encourages reliance on judicial decisions…"). That is, Nesmith's first Complaint was dismissed pursuant to Defendants' Motion and thus where Nesmith names the same party, Beth, as a defendant and makes identical claims arising from the same transactions or occurrences, Beth's Motion to dismiss will be granted.

**2. Deliberate Indifference**

Nesmith's claim arises from an alleged violation of his Eighth Amendment right to be free from "cruel and unusual punishments" when Beth was allegedly deliberately indifferent toward his medical needs. U.S. Const. amend VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). The Court has also held that "accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 32 (1993).

> The Court has further expounded on prisoners' Eighth Amendment rights, stating that
>
> > a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a

> constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

Estelle, 429 U.S. at 106. The Court provided additional guidance, stating that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Id. at 107. In fact, neither "inadvertence [n]or error in good faith…characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…." Whitley v. Albers, 475 U.S. 312, 319 (1986).

A prisoner "claiming that the conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials," and thus "a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." Wilson v. Seiter, 501 U.S. 294, 294-97 (1991) (citing Estelle, 429 U.S. at 106). Therefore, a complaint must include some factual allegations of the two elements requisite to establish a claim of deliberate indifference, i.e., (1) a serious medical need and (2) a culpable mental state establishing deliberate indifference.

The Third Circuit has held that a serious medical need is established where it has been diagnosed by a physician as requiring treatment, easily recognizable by a lay person, or by "reference to the effect of denying the particular treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citing Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979)). A serious medical need may also be identified where there is "unnecessary and wanton infliction of pain," or where "denial or delay causes an inmate to suffer a life-long handicap or permanent loss…." Id. (citing Estelle 429 U.S. at 103).

7

The second element, deliberate indifference, has been consistently held to a standard above "mere allegations of malpractice." Id. at 346. However, deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment…and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Id. at 346 (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976), cited with approval in Estelle, 429 U.S. at 105). Further, "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment….'" Id. at 347 (citing West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)). The Supreme Court has held that deliberate indifference should be found where a prison official "knows of and disregards an excessive risk to inmate health or safety; the official [is] both…aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [has] also [drawn] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1970).

Further, the test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients" and "[c]ourts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Even so, preventing an inmate from receiving recommended treatment or "denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment…violates the constitutional standard enunciated in Estelle." Pierce, 612 F.2d 754 at 762; Keve, 571 F.2d at 163. Additionally, deliberate indifference has been found where "the prison official persists in a

8

particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)).

Thus, where an inmate has a serious medical need, prison officials are required to provide a level of care that is based on an acceptable professional assessment of the inmate. Although the deliberate indifference standard does not sag to the level of negligence, prison officials may not refuse to treat or treat with an eye to efficiency if it would pose an unnecessary or excessive risk to the inmate's health or safety.

Nesmith contends that Beth was deliberately indifferent to his medical needs when his machine was held in "RBC" under Beth's supervision for about four months, Beth stopped answering his "medical slips," and his chronic back pain and heart condition were not treated properly. (ECF No. 3 at 5.) Beth contends that Nesmith "received numerous assessments from medical providers, medications, medical devices, and other therapies to treat his alleged conditions." (ECF No. 19 at 4.) Further, Beth contends that Nesmith does not adequately support his statements that treatment was withheld and that mere disagreement with provided treatment should not withstand her Motion. (ECF No. 19 at 4.)

Nesmith's Complaint and Exhibits include numerous references to treatment he has received. Nesmith includes a medical request slip dated September 18, 2010 in which Nesmith alleges that he has not been given medication for his back pain and had been denied access to a doctor for his heart condition. (ECF No. 3-1 at 2.) However, Nesmith also includes a medical request slip dated just three days later, September 21, 2010, where he acknowledges that he has been given medication and an extra mattress for his back pain. (ECF No. 3-1 at 4-5.) In the September 21, 2010 medical request slip, Nesmith claims that the medication is not working and

that the "extra matt (sic) is good, but to (sic) late." (ECF No. 301 at 4.) In an October 16, 2010 grievance, Nesmith restates his assertion that he "feel(s) (that he is) not getting the medical treatment [he] needs" for his sleep apnea and back pain and that his back pain "is getting worse each day." (ECF No. 3-1 at 8.)

Nesmith also identifies that he received his machine for sleep apnea around March, 2011. (ECF No. 3 at 5.) Nesmith's Complaint includes only a statement that he had to wait until March 2011 for his machine and does not suggest that he was refused the device entirely. Nesmith claims in his Complaint that Beth informed him that the machine would need to be cleared by medical before he could use it because "anything can (sic) be in it" or "it may knot (sic) be [his]." (ECF No. 3 at 5.) Further, Nesmith includes a medical request form, dated September 3, 2010, in which Monza replied informing Nesmith that the machine would have to be "cleared by medical." (ECF No. 3-1 at 13.) Nesmith issued another medical request slip on October 14, 2010, attempting to fulfill the prison's requirements to receive the machine and received a response informing him that the prison required Nesmith to "name the prescribing Doctor." (ECF No. 3-1 at 6.) Nesmith then filed a grievance form two days later, on October 16, 2010, stating that his sleep apnea was not being treated properly. (ECF No. 3-1 at 8.) Finally, Nesmith includes a medical request form dated January 12, 2011, in which he asks for an update on the prison's evaluation of his machine and states that "it's been (2) weeks." (ECF No. 3-1 at 15.) The response to his grievance stated that the prison was waiting for verification of the doctor's order. (ECF No. 3-1 at 15.)

Claims for deliberate indifference require that the Plaintiff show that a defendant has denied reasonable requests for medical treatment that exposes an inmate to undue suffering. Lanzaro, 834 F.2d at 346. Because "[p]rison officials must be free to take appropriate action to

ensure the safety of inmates and corrections personnel," an evaluation of Nesmith's machine and policy requiring a doctor's order are reasonable safety measures against entry of foreign devices. Bell v. Wolfish, 441 U.S. 520, 547 (1979). However, an action still requires a determination as to "whether the evidence goes beyond a mere dispute over…reasonableness…or the existence of arguably superior alternatives." Whitley v. Albers, 475 U.S. 312, 322 (1986). Nesmith's requests for the machine are not themselves unreasonable, but prison staff must be afforded a reasonable amount of time to ensure that the device is both safe and necessary. Thus, Nesmith's claim must be considered only as an allegation that Beth orchestrated an overly lengthy evaluation that amounted to a denial of a reasonable request for medical treatment and exposed Nesmith to undue suffering. However, Nesmith must show that the delay in receiving medical treatment led to further harm. *See,* e.g., Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). Because Nesmith has not provided any claim for injury due to the delay in receiving the machine, Beth's Motion to dismiss for failure to state a claim will be granted.

Nesmith also alleges deliberate indifference to his medical conditions of chronic back pain and a heart condition. (ECF No. 3 at 5.) Even if a serious medical need is assumed, Nesmith acknowledges treatment that has been given in the form of medication, evaluations, and an extra mattress. (ECF No. 3-1 at 4.) Thus, Nesmith's Complaint in regard to deliberate indifference toward his back pain and heart condition amounts to nothing more than mere disagreements with prescribed treatment plans. Thus, Beth's Motion to Dismiss for failure to state a claim in regard to Nesmith's Complaint for deliberate indifference towards his back pain and heart condition will be granted.

B. Claims Against BCJ

   1. Deliberate Indifference

The Third Circuit has held that "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" and "absent a reason to believe [or actual knowledge] that prison doctors or their assistants are mistreating [or not treating] a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the plaintiff "bears the burden of proving [and hence pleading] facts supporting the defendants' mental states." Id. Further, the Third Circuit has held that where a prisoner wrote letters to a Superintendent and State Commissioner for Corrections, "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

In order for non-medical personnel to be found liable for deliberate indifference, the plaintiff must show that the personnel "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating [or not treating]'" the prisoner. Thomas, 142 F. App'x at 39 (citing Spurill, 372 F.3d at 236). Although forwarding grievance forms to medical staff or speaking with them directly may be helpful, "a failure to undertake such actions or others like them does not constitute deliberate indifference, and may not be legally recognized as such." Id. (citing Durmer, 991 F.2d at 69). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Nesmith does not include any specific allegation against BCJ for deliberate indifference. As BCJ points out, "[i]t is unclear whether plaintiff's claims concerning his medical care are

intended to be directed anyone other than the medical defendant." (ECF No. 28 at 9.) Because responding to grievance forms does not establish personal knowledge and "liability cannot be predicated solely on the operation of *respondeat superior*," the only cognizable claim Nesmith could be asserting against BCJ for deliberate indifference is a statement that the "medical staff" refused to address his "chronic pain, sleep apnea, [and] heart condition." Thomas, 142 F. App'x at 39; Rode, 845 F.2d at 1207; (ECF No. 3 at 5.) BCJ argues that Nesmith's medical claims should be dismissed for the same reasons raised by co-defendant, Beth. (ECF No. 27 at 4.) Thus, BCJ's Motion to Dismiss for failure to state a claim pursuant to Nesmith's claims regarding treatment for sleep apnea, back pain, and a heart condition will be granted.

   2. **Denial of Furlough**

The bulk of Nesmith's Complaint alleges a denial of furlough to attend his brother's funeral. Pennsylvania law dictates that "any offender [who] has been sentenced to undergo imprisonment in a county jail for a term of less than five years" must seek a furlough from "the court…to leave the jail…for the purpose of…attending to the needs of family…or for other lawful purposes…." 42 Pa.C.S.A. § 9813. This statute leaves discretion to grant a furlough firmly in the hands of the court and not jail officials. Id. In Spuck v. Ridge, 347 F. App'x 727, 730 (3d Cir. 2009), the Third Circuit reiterated that "inmates do not have a constitutional right to be furloughed" when incarcerated at State facilities. The Third Circuit has also held that prisoners do "not have a constitutional right to receive a furlough" when incarcerated at a federal prison. Groppi v. Bosco, 208 F. App'x 113, 115 (3d Cir. 2006). Thus, no prisoner has a constitutional right to a furlough regardless of whether they are incarcerated at a State or federal facility.

Nesmith argues that BCJ is liable to him for actions that resulted in a denial of furlough to attend a family funeral. (ECF No. 3 at 2-4; ECF No. 9 at 1.) Prisoners do not have a constitutional right to a furlough and decisions about furlough cannot be made by jail officials, but rather a court. Thus, Nesmith's Complaint in regard to a denial of furlough will be dismissed pursuant to BJC's Motion because Nesmith has no right to furlough and BJC is not responsible for furlough decisions.

### 3. DNA Extraction

Pennsylvania State law provides a range of offenses for which a DNA sample is required. Title 44 Pa.C.S.A. § 2316 identifies the parameters of legitimate mandated DNA extraction to persons "convicted or adjudicated delinquent for a felony sex offense or other specified offense" or who are "incarcerated for a felony sex offense or other specified offense…." 44 Pa.C.S.A. § 2316. This statute identifies that a DNA sample should be drawn "upon intake to a…jail" or "immediately after the sentencing or adjudication," but may still be "drawn any time thereafter by the…jail" if the "sample is not timely drawn in accordance with this section…." 44 Pa.C.S.A. § 2316. Further, Title 44 Pa.C.S.A. § 2303 provides that "other specified offense" is defined as "[a] felony offense or an offense under 18 Pa.C.S. § 2910… or 3126…or an attempt to commit such an offense."

Title 44 Pa.C.S.A. § 2316 also states that "[u]nder no circumstances shall a person who is convicted or adjudicated delinquent for an offense covered by this subsection be released in any manner after such disposition unless and until a DNA sample has been withdrawn." In addition, the same statute provides as a "[c]ondition of release, probation or parole" that "[a] person who has been convicted or adjudicated delinquent for a felony sex offense or other specified offense and who serves a term of confinement in connection therewith after June 18, 2002, shall not be

released in any manner unless and until a DNA sample has been withdrawn." 44 Pa.C.S.A. § 2316. Because the definition of "other specified offense" under 44 Pa.C.S.A. § 2303 clearly includes any felony offense, DNA extraction is a mandatory condition both of conviction and release, probation, or parole for any felony offenders in a Pennsylvania State jail.

Nesmith argues that BCJ used a "DNA test to keep [him] from [his] brother's funeral." (ECF No. 9 at 1.) Because 44 Pa.C.S.A. § 2316 mandates DNA extraction as a "condition of release" for a person convicted of a "felony offense" and a felony is defined as "[a] serious crime usually punishable by imprisonment for more than one year," Nesmith's conviction of Access Device Fraud, Theft, and related charges that resulted in a conviction of 11.5 to 23 months imprisonment qualifies him as a felon and thus subjects him to mandatory DNA extraction for release purposes. 44 Pa.C.S.A. § 2303; Black's Law Dictionary (9th ed. 2009); (ECF No. 9-1 at 4); (ECF No. 3 at 1). Therefore, Nesmith's claims regarding DNA extraction and its use in the furlough process will be dismissed pursuant to BCJ's Motion.

### 4. Commissary Prices

The District Court for the Western District of Pennsylvania has consistently held that "[i]nmates have no federal constitutional right to be able to purchase items from a commissary" and have "no federal constitutional right to purchase items from the Jail commissary at any particular price or to have the vendor restrained from charging even exorbitant prices." Travillion v. Allegheny Cnty. Bureau of Corrections, No. 2:07-cv-928, 2008 WL 2699988, at *2 (W.D. Pa. July 7, 2008); Hopkins v. Keefe Commissary Network Sales, No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007); Wallace v. Rustin, No. 10-1474, 2011 WL 3957419, at *2 (W.D. Pa. Sept. 7, 2011). Further, the First Circuit has held that "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost." French v.

Butterworth, 614 F.2d 23, 25 (1st Cir. 1980); *See, e.g.*, Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996). Although addressing a different issue of housing, the Supreme Court has held that "the Constitution does not mandate comfortable prisons" and that "[i]n assessing claims that conditions of confinement are cruel and unusual, courts must bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" Rhodes v. Chapman, 452 U.S. 337, 349-50 (1981) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Further, the Supreme Court of the United States has held that policies of maintaining particular housing units in Pennsylvania prisons such as Restricted Housing Units and Special Management Units that "seriously restrict inmates' ordinary prison privileges" by means of limiting "access to the commissary or outside visitors" were adequately supported to survive summary judgment. Beard v. Banks, 548 U.S. 521, 522-526 (2006). Although the Supreme Court's holding addressed specifically the issue of summary judgment for a claim of violation of a prisoner's First Amendment rights when the policy "denie[d] newspapers, magazines, and photographs" to certain inmates, the Court did identify access to the commissary as a "privilege" and noted, generally, that the "Pennsylvania's prison regulations are permissible." Id. at 523-24, 526. Even though the issue in Beard dealt with restrictions on particular prisoners who have been placed in special housing as a punishment or incentive for behavioral changes rather than regulations that address the entire prison population, the Court nonetheless determined that restricting commissary access can be justified as a constitutional policy. Id. at 525. Thus, the Court has identified that prisoners do not have an unconditional constitutional right to access a commissary at all and access to the commissary is properly understood as a privilege.

The consistent holdings of the Pennsylvania Western District Court, the First Circuit, the Eighth Circuit, and the Supreme Court of the United States indicate that access to a prison commissary is a privilege, not a right, and there exists no constitutional right for prisoners to be free from even exorbitant commissary prices.  Nesmith argues that the commissary prices are "crazy high" and alludes to a conspiracy to serve small portions of food so that inmates will be forcibly subjected to overpriced commissary supplies. (ECF No. 3 at 6.) Nesmith does not name a particular Defendant or party in raising this issue, however BCJ addresses it in its Brief. (ECF No. 28 at 8-9.) BCJ contends that prisoners do not have a right to competitive commissary prices by stating that "the alleged civil right at issue does not exist…." (ECF No. 28 at 9.) Because inmates do not have a right to competitive prices, a legitimate claim for conspiracy in this matter cannot exist.  That is, a conspiracy must include an agreement to deprive an individual of "the free exercise or enjoyment of any right or privilege secured to him by the Constitution or law of the United States." 18 U.S.C. § 241.  Because Nesmith has no right to even reasonable commissary prices, no conspiracy can exist and his claims in regard to all commissary matters will be dismissed pursuant to BCJ's Motion.

5. **Food Portions**

The Supreme Court has held that "[t]he [Eighth] Amendment…imposes duties on…[prison] officials…[to] provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food…."  Farmer v. Brennan, 511 U.S. 825, 833 (1994). Additionally, to properly state a claim for a violation of a prisoner's Eighth Amendment rights, two requirements must be met; "the deprivation alleged must be, objectively, 'sufficiently serious'" and the prisoner must allege a "'sufficiently culpable state of mind'" which amounts to "deliberate indifference." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Where

17

a Plaintiff made allegations that food served in prison was "not fit for human consumption," the Third Circuit held that "naked statements such as this do not ordinarily merit Federal court intervention. There were no specifics whatsoever alleged in the complaint which could merit a cause of action under 42 U.S.C.A. §§ 1983, 1985 or the Eighth Amendment safeguards." Marnin v. Pinto, 463 F.2d 583, 584 (3d Cir. 1972).

The Supreme Court has further held that there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed…." Wilson, 501 U.S. at 303. Although prisoners have the right to receive adequate food, allegations must include both risk of serious harm and a state of mind amounting to deliberate indifference in order to proceed on this matter under § 1983. Bare statements or conclusions about portion size or palatability do not meet this standard in the Third Circuit.

Nesmith contends that the food portions are "so small that it's funny, but it's not," and makes statements about what other inmates have told him as evidence of inadequate meals. (ECF No. 3 at 6.) BCJ argues that Nesmith's allegation is "insufficient to state a claim upon which relief may be granted" when he does not allege nutritional inadequacy nor immediate danger to his health and well-being. (ECF No. 28 at 8.) BCJ correctly identifies that the Supreme Court holds claims regarding conditions of confinement to the standard of deliberate indifference and that conditions must constitute an objectively serious risk to an inmate's health. Further, the Third Circuit has rejected complaints based on bare statements that meals are inadequate. Thus, Nesmith's naked conclusion about portions will be dismissed in this matter pursuant to BCJ's Motion.

**6. BCJ as a Defendant**

Nesmith names the Beaver County Jail as a Defendant to this suit. The jail, however, is a building and not an entity subject to suit under 42 U.S.C. § 1983. *See*, e.g., Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) ("state agency may not be sued under 42 U.S.C. § 1983 since it is not a person"); Howie v. Allegheny Cnty., 2009 WL 1309749, at *2 (W.D. Pa. 2009) ("Here, the claims asserted against the [jail] are subject to dismissal because jail facilities are not 'persons' for the purpose of § 1983 liability."). Therefore, BCJ is not an entity that is properly subject to suit and would be dismissed as a Defendant to this action even if Nesmith's Complaint was not deficient for failure to state a claim. Moreover, even if Nesmith were allowed to amend his Complaint to name Beaver County as the proper defendant, his claims would still not survive dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions to Dismiss filed by Defendants Beaver County Jail (ECF No. 27) and Beth Harris (ECF No. 18) are **GRANTED** and this action is dismissed with prejudice.[1]

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Dated: August 7, 2012

---

[1] The court notes that by Order dated May 25, 2012 Plaintiff was given the opportunity to file either a response to the second Motion to Dismiss or to file an amended complaint.

 

                                                _____
                                                Lisa Pupo Lenihan
                                                Chief United States Magistrate Judge

cc:  Richard A. Nesmith
      Shepard's Heart Veteran's Home
      13 Pride Street
      Pittsburgh, PA  15219

      Counsel of record.